MIKE CURTIS v. STATE.

No. A-10786.   April 28, 1948.

(193 P. 2d 309.)

334

L. C. Colter, of Nowata, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, J.   The defendant below, Mike Curtis, was charged by original information in words and figures as follows, to wit:

"That Paul Vernon, Leroy Drake and Mike Curtis did in said county and state on or about the 16th day of January, 1946, A. D. and prior to the presentment hereof commit the crime of: Grand Larceny In that they wilfully, unlawfully, and feloniously did take, steal and carry away seven (7) domestic animals, to-wit: hogs, of the value of $200.00, the personal property of Emma Hopson, at about one-half mile north of Noxie store, in Nowata County, Oklahoma, with the intent and for the purpose of converting said hogs to their own use and benefit and depriving the said Emma Hopson of the use and benefit thereof.

"Contrary to the form of the Statute and against the peace and dignity of the State.   * * *"

And by amended information in words and figures as follows, to wit:

"That Paul Vernon, Leroy Drake and Mike Curtis did in said County and State on or about the 16th day of January, 1946, A. D. and prior to the presentment hereof commit the crime of: Grand Larceny, in that they wilfully, unlawfully and feloniously, by fraud and stealth, without the consent and against the will of the owner, did take, steal and carry away seven (7) domestic animals, to-wit: six (6) black Poland China hogs, five of which weighed about 200 to 250 pounds, and one of which weighed about 350 pounds, and one red hog which weighed about 250 pounds, worth and of the value of $200.00,

the personal property of Emma Hopson, at about one-half mile north of Noxie store, in Nowata County, Oklahoma, with the felonious and fraudulent intent and purpose on the part of them, the said Paul Vernon, LeRoy Drake and Mike Curtis, to convert said hogs to their own use and benefit and permanently depriving the said Emma Hopson, the owner, of the use and benefit thereof.

"And the county attorney aforesaid, gives the court further to know and be informed that prior to the 16th day of January, 1946, to-wit: the 31st day of August, 1937, the said defendant, Leroy Drake, stood charged with the crime of grand larceny in the District Court of Osage County, Oklahoma, a court having jurisdiction of said offense, and on said 31st day of August, 1937, the said Leroy Drake was adjudged guilty and convicted of said crime so charged against him.

"And the county attorney aforesaid gives the court further to know and be informed that subsequent to the 31st day of August, 1937, and prior to the 16th day of January, 1946, to-wit: on the 27th day of May, 1939, the said defendant, Leroy Drake, stood charged with the crime of larceny of domestic animals in the District Court of Nowata County, Oklahoma, a court having jurisdiction of said offense, and on said 27th day of May, 1939, was adjudged guilty and convicted of said felony so charged against him as aforesaid.

"And the county attorney aforesaid, gives the court further to know and be informed that prior to the 16th day of January, 1946, to-wit: On or about the 7th day of June, 1927, in the District Court of the 5th Judicial District, at Roswell, in the County of Chaves, State of New Mexico, the said defendant, Mike Curtis, stood charged with a felony, to-wit, grand larceny, and on or about said day and date, the said Mike Curtis was adjudged guilty and convicted of a felony on said charge;

"And the county attorney aforesaid, gives the court further to know and be informed that subsequent to the 7th day of June, 1927, and prior to the 16th day of Janu-

ary, 1946, to-wit: on or about the 29th day of November, 1933, the said defendant, Mike Curtis, stood charged with a felony, to-wit: assault with a deadly weapon, in the District Court of the 5th Judicial District of New Mexico, a court having jurisdiction of said offense, sitting at Roswell, in Chaves County, and on or about said 29th day of November, 1933, the said defendant, Mike Curtis, was adjudged to be guilty and convicted of said felony in said court in said State of New Mexico;

"And the county attorney aforesaid, gives the court further to know and be informed that subsequent to the 29th day of November, 1933, and prior to the 16th day of January, 1946, to-wit: on or about the 1st day of August, 1942, the said defendant, Mike Curtis, stood charged with a felony in the District Court of Montgomery County, Kansas, sitting at Independence in said county and state, and on or about the 1st day of August, 1942, the said defendant, Mike Curtis, was adjudged to be guilty and convicted of said felony,

"Contrary to the form of the Statute against the peace and dignity of the State. * * *"

A casual examination of the amended information, upon which this case was tried, reveals that it is broad enough in its allegations to allege both the crime of grand larceny and the crime of larceny of domestic animals. Title 21 O. S. A. § 1701 defines larceny as follows, to wit:

"Larceny is the taking of personal property accomplished by fraud or stealth, and with intent to deprive another thereof."

Title 21 O. S. A. § 1704 defines grand larceny as follows, to wit:

"Grand larceny is larceny committed in either of the following cases:

"1. When the property taken is of value exceeding twenty dollars. * * *"

Title 21 O. S. A. § 1705 fixes the punishment for grand larceny as follows, to wit:

"Grand larceny is punishable by imprisonment in the penitentiary not exceeding five years."

It clearly appears in the amended information that the pleader charged all the essential elements of grand larceny by alleging that the taking of the property (in this case the hogs) was accomplished by fraud and stealth and with the intent to deprive Emma Hopson, the owner, of said hogs thereof and by alleging that they were of the value of more than twenty ($20) dollars, in this case to wit: $200.

Title 21 O. S. A. § 1716 defines larceny of domestic animals in part as follows, to wit:

"Any person in this State who shall steal any * * * cow, or hog, shall be guilty of a felony and upon conviction shall be punished by confinement in the State Penitentiary for a term of not less than three years, nor more than ten years * * *."

It clearly appears that the amended information charges all of the essential elements of larceny of domestic animals, to wit: that the defendant did "steal (from Emma Hopson) and carry away seven (7) domestic animals, to wit: Six (6) black Poland China hogs, five of which weighed about 200 to 250 pounds, and one of which weighed about 350 pounds, and one red hog which weighed about 250 pounds * * *." To this information the defendant demurred and, among other things, alleging the information was duplicitous. Thus the objection to the information was properly raised. Moreover, before the introduction of the evidence defendant moved to suppress the evidence on the grounds that said information was duplicitous. Both the said demurrer and the motion

to suppress were overruled, to which the defendant excepted.

Upon this state of the record the case was tried. At no stage of the proceedings did the state attempt to prove the value of the property allegedly stolen. Thereafter the evidence was concluded and thereupon the court proceeded to abandon the charge of grand larceny and to instruct the jury upon the theory of larceny of domestic animals. The jury returned a verdict of "guilty as charged in the information," and then proceeded to fix the penalty as for the crime of larceny of domestic animals and as for a second and subsequent offender at twenty-five years in the penitentiary. Upon this verdict judgment and sentence was accordingly pronounced as for larceny of domestic animals and second or subsequent offender. Motion for new trial was overruled and this appeal perfected.

Among other contentions defendant asserts that the original preliminary complaint, the information and the amended information charged grand larceny and that he is entitled to be tried upon the charge as laid in the amended information. This contention of the defendant we believe to be meritorious. Article II of § 20 of the Oklahoma Constitution, in relation to criminal charges and the defendant's rights, provides as follows:

"In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed: * * * *He shall be informed of the nature and cause of the accusation against him and have a copy thereof,* * * *." (Emphasis ours)

Title 22 O. S. A. § 401, subsection 2, provides:

"The indictment or information must contain: * * *

"2. A statement of the acts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended."

In Snapp v. State, 2 Okla. Cr. 515, 103 P. 553, this court defined the office of an information as not only a pleading designed to give the court jurisdiction, "but it is also the pleading on the part of the state, informing said defendant of what offense he is charged with, for the purpose of the trial." Moreover, Title 22 O. S. A. § 404 provides as follows:

"The indictment or information must charge but one offense, but where the same acts may constitute different offenses, or the proof may be uncertain as to which of two or more offenses the accused may be guilty of, the different offenses may be set forth in separate counts in the same indictment or information and the accused may be convicted of either offense, * * *."

The foregoing section of the statute does not permit the charging of more than one offense in the same count of an information. In Williams v. State, 16 Okla. Cr. 54, 180 P. 559, 560, this court said:

"The indictment or information must charge the defendant with but one offense. In this state, the defendant may not be placed upon trial for two offenses at the same time."

See Lawrence v. State, 39 Okla. Cr. 229, 264 P. 214. See, also, Cochran v. State, 4 Okla. Cr. 379, 111 P. 974; Hodge v. State, 52 Okla. Cr. 141, 3 P. 2d 252; Thoreson v. State, 69 Okla. Cr. 128, 100 P. 2d 896. In Cole v. State, 38 Okla. Cr. 396, 262 P. 712, 713, in the body of the opinion the court said:

340

"In this state, both by statute (section 2558, Comp. St. 1921 [22 O. S. 1941 § 404]) and by numerous decisions of this court, it is well settled that a defendant cannot be placed upon trial for two offenses at the same time. Where it appears from the record that a defendant was called upon to defend against two separate offenses over his objections and exceptions, a conviction cannot stand. Bonitzer v. State, 4 Okla. Cr. 354, 111 P. 980; Tunnard v. State, 5 Okla. Cr. 529, 115 P. 603; Kimbrell v. State, 7 Okla. Cr. 354, 123 P. 1027; Kime et al. v. State, 14 Okla. Cr. 111 167 P. 1159; Williams v. State, 16 Okla. Cr. 54, 180 P. 559."

Under Title 21 O. S. A. § 23 it might be contended that this conviction could be sustained. Said section reads as follows:

"An act or omission which is made punishable in different ways by different provisions of this Code, or other penal statute, may be punished under either of such provisions, except that in cases specified in Sections 2805 and 2808, the punishments therein prescribed are substituted for those prescribed for a first offense, but in no case can it be punished under more than one; and an acquittal or conviction and sentence under either one, bars the prosecution for the same act or omission under any other. (R. L. 1910, § 2794.)"

But this section must be construed in connection with the preceding section of the Constitution and the statutes. In order that the last quoted section and the preceding sections may not be in conflict, it has been held that where a situation such as confronts us in the case at bar where the information is broad enough to charge either of two offenses, the prosecutor may elect under which of the sections the prosecution will be maintained. This is made necessary because there are many acts or transactions variously defined in the statutes, as constituting more than one offense, and where it is most dif-

ficult to allege facts covering one offense without also charging another offense, thus exposing the information to the objection of duplicity. It is to cover such situations that section 23 of Title 21, O. S. A. was enacted, and the construction given it by this court as disclosed in the hereinafter cited and quoted cases. In construing the foregoing statute as being thus limited, this court, in Tracy v. State, 24 Okla. Cr. 144, 216 P. 941, wherein the defendant was charged with grand larceny of an automobile of the value in excess of $20, the contention being that the defendant could not be convicted of grand larceny but should have been convicted if at all for larceny of an automobile, said at page 152 of 24 Okla. Cr., at 944, of 216 P.:

"It is contended further that, since it was recited in the information that the property stolen was an automobile, the defendant could not be convicted of grand larceny. Our statutes provide (section 2288, Comp. Stat. 1921 [21 O. S. 1941 § 23]), and this court has held, that where two statutes provide different penalties for the same class or kind of offense the state may elect under which section the prosecution may be maintained. Hays v. State, 22 Okla. Cr. 99, 210 P. [728] 729."

To the same effect see Rice v. State, 57 Okla. Cr. 283, 48 P. 2d 349; Douglas v. State, 57 Okla. Cr. 154, 47 P. 2d 215; Allcott v. State, 55 Okla. Cr. 128, 25 P. 2d 1112; State v. Bunch, 23 Okla. Cr. 388, 214 P. 1093; Ex parte Scherer, 60 Okla. Cr. 195, 62 P. 2d 660. See, also, Minter v. State, 75 Okla. Cr. 133, 129 P. 2d 210; Barnett v. State, 75 Okla. Cr. 340, 131 P. 2d 496, to the same effect that the county attorney may elect under which statute to maintain a prosecution where the act is punishable in different ways by different provisions of the statute. In Saxon v. State, 19 Okla. Cr. 58, 198 P. 107, 108, this court said:

"It was discretionary with the prosecuting attorney to elect before trial for which offense he would prosecute the accused, where the evidence showed the commission, by the same act or transaction, of more than one offense. This principle is elementary. However, there could be no conviction of an offense other than that charged, or a lower degree thereof, or of an offense necessarily included therein, although the evidence may disclose the fact of defendant's guilt, by the same acts, of an offense not charged or included within the charge."

The first question confronting this court is, was the amended information of such character as to meet the requirements of art. II, § 20 of the Constitution, and the provisions of Title 22 O. S. A. § 401, subsection 2; Title 22 O. S. A. § 404 and Title 21 O. S. A. § 23? We think so. It informed the defendant of the nature of the cause or accusation against him. It set forth the acts complained of in ordinary language so as to enable a person of common understanding to know what was intended. As was said in the case of Snapp v. State, supra, it not only gave the court jurisdiction, but it informed the defendant of what offense he was charged for the purpose of the trial.

The second question confronting the court is, does this information fall within the provisions of Title 21 O. S. A. § 23, and the cases construing the same? We think so. In the case at bar the county attorney exercised that discretion accorded him by the law in an election before trial. He elected to stand on a charge of grand larceny, as disclosed in both the descriptive label and the charging part of both the original information and the amended information by charging all the essential elements of grand larceny. His election to stand on the charge of grand larceny is further disclosed in the appearance bond, wherein it is recited that the "principal stands charged

by information duly presented in the district court of No-
wata County, Oklahoma, with the crime of grand lar-
ceny". At no time before trial and during the trial un-
til the jury was instructed was the defendant apprised
of a different intention other than contained in the de-
scriptive label and the charging part of the information.
Here let us observe that the purpose of a descriptive la-
bel is to evidence the prosecutor's election, and intention
as to the offense he believes cover the unlawful acts. Par-
ticularly, should this be true where the charging part
of the information may be broad enough to cover either
of two offenses defined in separate statutes, as does the
case at bar. And, where as herein, there is no inconsist-
ency in the descriptive label and the charging part of the
amended information on which the defendant was charg-
ed, we believe the prosecutor should be held to have clear-
ly indicated an election, as between the charge of grand
larceny and the charge of larceny of domestic animals
and he should be bound by such election. We believe that
in cases such as the one at bar, where the charging part
of the information may define either of two offenses, then
resort should be had to the descriptive label to determine
the prosecutor's election as to the charge intended. Where,
as in the case at bar, the pleader has clearly made an
election between two offenses charged in the same count
of an information, the defendant must be tried on the
basis of the election. But this defendant was not tried
and convicted for grand larceny. He was tried, the jury
instructed, a verdict returned, punishment fixed, and
judgment and sentence imposed for larceny of domestic
animals. In this the court erred. Under the conditions
as presented in this case by virtue of the prosecutor's elec-
tion of grand larceny and the information alleging all the
essential elements thereof, it was definite and certain as

to the charge intended, was intelligible, and the same was not subject to demurrer for duplicity. The trial court therefore was not in error in overruling the defendant's demurrer. A defendant cannot be led to believe by the clearly expressed election he is to be tried for one offense and the jury instructed on another, at the whim or caprice of either the prosecutor or the court. Particularly, this should be the rule where the other offense is an entirely different crime, and carrying a greatly increased penalty with an additional charge of a second or subsequent offender involved. Such a situation invades the defendant's fundamental right to be apprised of the charge he must meet. He should never be subjected to the uncertainties of speculative procedure. He should never be compelled to say at any stage of the proceeding "maybe the charge is this or maybe it is that." He should be able to look at the four corners of the complaint, information or indictment and be able to understand the nature of the offense with which he stands charged. Where, as in this case, the prosecutor has made a valid, binding election, on an information broad enough to cover either grand larceny or larceny of domestic animals, and the descriptive label indicated an election to prosecute for the lesser crime of grand larceny, then the state will be held to that election, and not be permitted to change its theory under such conditions after the trial has commenced.

The state relies on the case of Bruning v. State, 63 Okla. Cr. 1, 72 P. 2d 393, which is followed in Ex parte Conway, 84 Okla. Cr. 118, 179 P. 2d 699. This case was not a larceny case. There the pleader described the crime charged in the information as forgery in the first degree and evidently thought that he was charging forgery in the first degree. However, the district court correctly

construed the information as charging only the crime of forgery in the second degree and submitted that issue to the jury. No case has been called to our attention where the county attorney would name the offense in the descriptive label as a certain crime and then make allegations in the information which contained all of the essential elements of the crime named in the descriptive label and then the court at the trial change the issue so as to submit a greater crime to the jury solely because the charging part of the information also contained all of the essential averments necessary to constitute a greater crime. The situation presented in the case at bar is closely akin to a case where one is charged with first degree manslaughter but during the trial suddenly finds that he had been tried and convicted of murder, or one charged with forgery in the second degree and suddenly to awake to find that he had been convicted of forgery in the first degree. On the basis of due process could such proceedings be sustained? The answer to the question is obvious. We are not confronted with any such situation in the case at bar. Here the election disclosed in the descriptive label is for grand larceny and the charge confirms the election, by alleging every element of grand larceny, and its force is thus limited to grand larceny though broad enough to charge larceny of domestic animals. Under such conditions the constitutional requirements, the statutes, and the cases construing the same, require us to hold the prosecutor bound by his election, and a conviction on any other charge than as that so laid in the information as clearly expressed in the descriptive label and confirmed in the charging part of the information, is void for want of jurisdiction. The court was without the right either to try the defendant for or impose sentence for a crime not within the clearly indicated lim-

its of the amended information. In Ex parte Muse, 56 Okla. Cr. 232, 37 P. 2d 317, 319, this court said:

"The rule now supported by abundant authorities and clear reasoning is that the court must not only have jurisdiction over the person and subject-matter but authority to render the particular judgment. The want of jurisdiction to render a particular judgment may arise from the constitutional prohibition against the infliction of certain punishment or from punishment for an offense not charged in the indictment or information. * * *

"In Ex parte Harris, 8 Okla. Cr. 397, 128 P. 156, in the third paragraph of the syllabus, this court held:

" 'The judgment of the court must in all cases be based upon the verdict of the jury, and the verdict of the jury must be responsive to the issue joined by the indictment or information and the plea of the person on trial thereto, otherwise the court is without jurisdiction to render judgment thereon.' "

The situation herein was quite similar to that in the Muse case. There the charge was burglary in the second degree but the conviction was for grand larceny. The court held the conviction was void as not being within the allegations of the information. So it is in the case at bar.

Let us make our position clear. We are not holding that the allegation of value in a larceny of domestic animals charge makes the offense one of grand larceny, but where it is evident that the prosecution was instituted before the committing magistrate as the crime of grand larceny that the charge could not be changed in the district court to the crime of larceny of domestic animals for the reason that the same would constitute a material variance from the allegations of the preliminary complaint. Upon the remanding of this case, if the county attorney is desirous of prosecuting for the more serious offense

of larceny of domestic animals, he will have to commence his prosecution anew before the committing magistrate as the defendant has never had a preliminary examination on that charge.

Moreover, it is apparent that the departure from the charges laid in the information was fundamentally erroneous and highly prejudicial to the defendant. This must follow, for the reason that in addition to being charged with larceny of domestic animals the defendant was charged under the Habitual Criminal Act, Title 21, O. S. A. § 51, reading in part as follows:

"Every person who, having been convicted of any offense punishable by imprisonment in the penitentiary, commits any crime after such conviction, is punishable therefor as follows:

"1. If the offense of which such person is subsequently convicted is such that upon a first conviction an offender would be punishable by imprisonment in the penitentiary for any term exceeding five years, such person is punishable by imprisonment in the penitentiary for a term not less than ten years.

"2. If such subsequent offense is such that, upon a first conviction the offender would be punishable by imprisonment in the penitentiary for five years, or any less term, then the person convicted of such subsequent offense is punishable by imprisonment in the penitentiary for a term not exceeding ten years."

To change the charge from grand larceny to larceny of domestic animals when combined with the charge of criminal habituality subjects the defendant to the hazards of a greatly increased penalty which under the conditions herein involved was prejudicial to his fundamental rights.

Here the information charged grand larceny as evidenced by the prosecutor's election. The jury found the defendant guilty as charged in the information and then under the instructions of the court proceeded to impose sentence, on the basis of the greater penalty for larceny of domestic animals, and as a second or subsequent violator, to a term of 25 years in the penitentiary. Upon this verdict the court entered judgment and sentence accordingly. This was highly prejudicial to the defendant's right to be sentenced for grand larceny, a lesser offense and with a lighter penalty even though convicted as a subsequent offender.

The corroboration of the testimony of the accomplice is weak. We do not hold as a matter of law that there is no corroboration of the testimony of the accomplice as is insisted upon by counsel for the defendant, but it is of such a weak character that without the allegation and proof of the prior convictions the jury might not have convicted the defendant.

Under the conditions here presented it is not necessary that we consider any of the other assignments of error. The case is accordingly reversed and remanded for a new trial in a manner not inconsistent with the principles herein announced.

BAREFOOT, P. J., not participating. JONES, J., concurs.