Ex parte HARROLD LEE MOTLEY.

No. 11018.   May 5, 1948.

(193 P. 2d 613.)

402

Ewing C. Sadler, of Sulphur, for petitioner.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for respondent.

BRETT, J. This is an original proceeding for writ of habeas corpus brought herein by Harrold Lee Motley wherein he seeks release from the custody of C. P. Bur-

ford, warden of the State Penitentiary at McAlester, Okla. In his petition he alleges that the cause of his restraint is that on the 27th day of October, 1936, he was sentenced by Honorable Roy Paul, then district judge of Atoka county, Okla., to serve a term of life imprisonment in the State Penitentiary at McAlester for the crime of murder. It is well to note at the outset that nowhere in the record does the petitioner question the jurisdiction of the court of the crime committed, of his person, or whether the judgment and sentence pronounced by the court was within the court's power to impose. But, in his verified petition he says said restraint is unlawful for the following reasons, to wit: That the judgment and sentence was void, contrary to the statutes of the State of Oklahoma, the Constitution and Bill of Rights of Oklahoma and the United States Constitution, for the reason that he was not served with a copy of the information together with a list of the witnesses to appear against him twenty-four hours before the case was called for trial; that he was not given twenty-four hours in which to plead; that he was not advised of his right to counsel at every stage of the proceeding, nor of his right to have counsel appointed for him; that no counsel was present at his arraignment; that judgment and sentence was pronounced immediately after entering his plea of guilty without being advised of his constitutional rights; that his plea was entered on the advice of a colored man by the name of Sonnie Hughes; that the court failed to ask him if he knew of any reason why judgment and sentence should not be pronounced against him and failed to advise him of his right to wait forty-eight hours before judgment and sentence; that he was not advised as to his right to trial by jury; that he was not advised of the different degrees of homicide; that if tried by jury he could be acquitted or found guilty of the charge of murder or a

lesser degree of homicide; that the jury could assess the punishment; that he was not advised of his rights nor advised of his rights or the consequences of his plea; that his plea was not free and voluntary but was induced by fear, ignorance and duress; that the court was therefore without jurisdiction to pronounce judgment and sentence and his confinement at the present time is without authority of law.

To the allegations of this petition respondent, C. P. Burford, warden of the State Penitentiary, made due response in which he alleges and states, in substance, that he denies each and every allegation in said petition except that he holds petitioner in custody pursuant to a judgment and sentence of the district court of Atoka county pronounced on October 27, 1936, whereby the petitioner was sentenced to serve life imprisonment upon a plea of guilty to a charge of murder; that the proceedings leading up to the judgment and sentence were in all things legal and valid; that the petitioner had the benefit of the advice of counsel of his own choosing and full knowledge of his rights; that his plea of guilty was voluntary without inducement by any representative of the state after being warned of the consequences thereof; that he was sentenced pursuant to his voluntary plea and was given the minimum punishment allowed by law for said crime.

The record herein reveals that the petitioner was charged with murder based upon the demise of his infant child which he is alleged to have beaten to death. The question presented by this record is: Did the court lose jurisdiction because the defendant was denied the aid of counsel? This record does not support the petitioner's contention as to lack of jurisdiction. It reveals that the petitioner had the aid of counsel of his own choosing at

a preliminary hearing, Mr. I. L. Cook, an able and respected attorney of Atoka, Oklahoma. It further discloses he was represented by him in all the proceedings up to and including the pronouncement of judgment and sentence. Mr. Cook advised the petitioner not to enter a plea of guilty and told him that if he should stand trial that he would not get more than ten to fifteen years, but notwithstanding this advice from an able lawyer, petitioner still persisted in entering a plea of guilty, in response to which he was sentenced to life imprisonment. In Johnson v. State, 79 Okla. Cr. 363, 155 P. 2d 259, it was said:

"Where (accused) * * * has (been) fully advised as to his constitutional and statutory rights and as to the consequences of his plea and that with such knowledge accused deliberately entered plea of guilty, trial court is justified in accepting it even in a capital case."

The record discloses that Mr. Cook counseled and advised him for fifty-two days up to and including the proceeding concerning which he now complains. As to whether he was represented by counsel in the proceedings in which he was sentenced the appearance docket discloses the following, to wit:

"October 27, 1936, Defendant arraigned in Open Court—After being advised of his rights, entered his plea of guilty in the presence of his Attorney, I. L. Cook. Judgment and sentence of the Court that Defendant, Harrold Motley serve a term of Life in the State Penitentiary at McAlester."

Moreover, the court's minutes disclose the following, to wit:

"October 27, 1936, Defendant arraigned in Open Court—After being advised of his rights, entered his plea of guilty in the presence of his attorney, I. L. Cook.

Judgment and sentence of the Court that Defendant, Harrold Motley serve a term of Life in the State Penitentiary at McAlester."

The court's minutes are the best evidence of what took place eleven years ago. They are not like the memory of man clouded by time, hence the keeping of an appearance docket and minutes in court proceedings.

"Where a disputed question arises as to what occurred upon arraignment of one accused of a crime, this court will give great weight to the recitation in the minutes of the court proceedings as to what occurred." Ex parte Meadows, 70 Okla. Cr. 304, 106 P. 2d 139, 141.

The minutes reveal that the petitioner had aid of counsel; that he was advised as to all of his rights; that he would not follow the advice of able counsel; that he was not denied any of the statutory or constitutional rights of which he now complains. The record further reveals that his contentions are substantially based upon evidence offered upon his own behalf. Under the authority of the case of Ex parte Matthews, 85 Okla. Cr. 173, 186 P. 2d 840, to warrant relief on evidence of this character the same must be clear and convincing. No such proof is before us in this proceeding. As the Attorney General aptly said "any contention that the trial court should have appointed an attorney to represent the defendant is nothing short of absurd. The defendant had his own attorney, but refused to follow his advice. Is it sensible to say that the court should then have appointed an attorney, and upon defendant's refusing to follow the advice of that attorney, have appointed a second one, and continued to make new appointments as long as the defendant insisted upon pleading guilty?" In our opinion, the law doesn't require such procedure.

Moreover, this record further reveals that this petitioner was not without experience in such matters, since prior to the time he entered his plea herein involved he had been in court, had been convicted and had served nine years in the State Penitentiary of Kansas for the crime of robbery in the first degree under the name of Charlie Johnson. In addition, at the time he was sentenced he was a school teacher thirty-four years of age. The petitioner was well fortified by both advice, experience and training against pleading guilty. He made a voluntary election to not avail himself of his right to trial by jury. The proof he offers to support his claim is anything but convincing. The proof that is offered by the petitioner in this connection is contradicted by the written records. Under such conditions, as was said in the case of Ex parte Matthews, supra:

"Every presumption favors regularity of the proceedings had in the trial court. The general rule often announced by this court is that error must affirmatively appear from the record; it is never presumed. Robbins v. State, supra [17 Okla. Cr. 294, 155 P. 491]. To follow the petitioner's contention would require us to presume irregularity in matters omitted from the record and particularly the court minutes, based entirely upon his testimony. Public policy will not permit the petitioner, in a habeas corpus proceeding, to supply the missing links, by his testimony standing alone, in a record. His release must be based upon something more substantial. In any event, his testimony should be corroborated by clear and convincing proof. No such proof is before us in this proceeding. As Judge Jones, of this court, so aptly said in Ex parte Meadows, 70 Okla. Cr. 304, 106 P. 2d 139, 147: 'A great proportion of those who are incarcerated in the Penitentiary would be willing to swear to almost anything to secure their release.'"

The contentions made in the case at bar are very similar to those that were made in the case of Ex parte Matthews, supra, where in the syllabus this court held:

"6. As against a collateral attack the judgment is valid unless the contrary appears in the record and omission in the record of every step in the proceeding does not overcome the presumption of regularity and warrant release on writ of habeas corpus."

This court has repeatedly held in habeas corpus proceedings that it will not look beyond the judgment and sentence of any court of competent jurisdiction as to mere irregularities of procedure or errors of law on questions over which the court had jurisdiction. The writ of habeas corpus cannot be used to perform the office of a writ of error on appeal, but will be limited to cases in which the judgment and sentence of the court attacked is clearly void. In re Walker, 84 Okla. Cr. 190, 180 P. 2d 670; Ex parte Tollison, 73 Okla. Cr. 38, 117 P. 2d 549; Ex parte West, 62 Okla. Cr. 260, 71 P. 2d 129; Ex parte Keel, 62 Okla. Cr. 277, 71 P. 2d 313; Ex parte Dunn, 33 Okla. Cr. 190, 242 P. 574; Ex parte Grant, 32 Okla. Cr. 217, 240 P. 759; Ex parte Hollingshead, 24 Okla. Cr. 131, 216 P. 486. The judgment and sentence herein sought to be vacated is not void.

If the foregoing was not sufficient reason upon which to base a denial of the writ of habeas corpus, the fact that petitioner had permitted eleven years to elapse since this plea was entered and judgment and sentence pronounced is a strong circumstance against the validity of his present claim. Now he seeks by his own testimony, and the cloudy recollection of others, to impeach the written record. The record before us fails to disclose a single objection to the procedure now complained of or that he

was denied any of his rights. In the Matthews case, supra, in this regard, we said:

"7. The right to relief by habeas corpus may be lost by laches, when the petition for habeas corpus is delayed for a period of time so long that the minds of the trial judge and court attendants become clouded by time and uncertain as to what happened, or due to dislocation of witnesses, the grim hand of death and the loss of records, the rights sought to be asserted have become mere matters of speculation, based upon faulty recollection, or figments of imagination, if not out-right falsifications."

To the same effect is the case of Ex parte Snow, 84 Okla. Cr. 423, 183 P. 2d 588. The facts involved and the contentions made in that case in many respects are similar to the case at bar.

Under the authority of the Snow and Matthews cases, supra, this attack on the judgment and sentence comes too late. The writ of habeas corpus must therefore be denied.

BAREFOOT, P. J., and JONES, J., concur.